# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Donna Morgan,

      Plaintiff

v.

Michael Bash, et al.,

      Defendants

Case No.: 2:19-cv-00546-JAD-BNW

**Order Denying Motions for Writs of Attachment and Partial Summary Judgment**

[ECF Nos. 15, 20, 33, 35, 41]

Donna Morgan contends that Michael Bash, Jeremy Bash, and Janice McCown convinced her to purchase interests in two Nevada companies who own real property in Clark County that's fit for commercial development—Ninety-Five Fort Apache Complex, LLC and Royal View, LLC.[1] Morgan alleges that the Bashes and McCown repeatedly assured her that there was "no downside" to investing in the companies and, consistent with these representations, provided an addendum to each purchase agreement that gives Morgan the option to "sell her units back to [the companies] and receive 10% per annum on her investment by exercising that option."[2]

Morgan alleges that she didn't see much, if any, return on her investments, the companies failed to take promised steps to make their properties profitable, and the Bashes gave Morgan the run around whenever she complained. Fed up, Morgan asserts that she gave the companies formal notice in February 2019 that she was exercising her option to sell her interests back to them.[3] But both companies rejected Morgan's demands, so she sues each of them and their

---

[1] ECF No. 1 at ¶¶ 28, 34.

[2] *Id.*

[3] *Id.* at ¶ 57.

managers,[4] the Bashes, and McCown claiming that they violated the Securities and Exchange Act of 1934 and sections of the California Corporations Code, committed promissory fraud, breached the purchase agreements and addenda, and breached the covenant of good faith and fair dealing that is implied in those contracts under Nevada law.[5]

There has been a recent flurry of activity in this case. This order addresses Morgan's pending motions for writs of attachment to levy on Fort Apache's and Royal View's real property[6] and for partial summary judgment on her breach-of-contract claims against those companies.[7] It also addresses Morgan's emergency motion for a writ of attachment to levy on Fort Apache's real property, which she contends is being sold.[8] To prevail on any of these motions, Morgan must demonstrate that the companies are obligated to buy back her interests in them. Because Morgan hasn't made this required showing, I deny each of her motions.

## Discussion

I begin with Morgan's motions for writs of attachment to levy on Fort Apache's and Royal View's properties. Rule 64 of the Federal Rules of Civil Procedure affords federal litigants all remedies that are available under the law of the forum for seizing property to secure satisfaction of the potential judgment, except when a federal statute governs. In Nevada, extraordinary remedies like attachment and garnishment are governed by NRS Chapter 31. Morgan moves under NRS 31.013, which enumerates three types of cases in which the court is

---

[4] *Id.* at ¶¶ 8, 10 (alleging that Fort Apache's manager is Berkley Enterprises, Inc. and Royal View's manager is Pepperdine Enterprises, Inc.).

[5] *Id.* at ¶¶ 59–134 (Morgan sues McCown for only promissory fraud and violating the California Corporations Code).

[6] ECF Nos. 15 (re: Royal View; corrected imaged at ECF No. 18), 33 (re: Fort Apache).

[7] ECF Nos. 20 (re: Royal View), 35 (re: Fort Apache).

[8] ECF No. 41.

authorized, "after notice and hearing," to direct the clerk of court to issue a writ of attachment. Morgan argues that this case is the type identified in NRS 31.013(1): "an action upon a judgment or upon a contract, express or implied, for the direct payment of money" and the judgment or contract is either (a) not secured by real or personal property in Nevada or (b) the value of the security given isn't enough and loss of value isn't the plaintiff's fault.[9]

Morgan concludes that NRS 31.013(1)'s requirements are met because each addendum is an express contract for the direct payment of money, which she claims Fort Apache and Royal View breached.[10] This conclusion depends on Morgan's interpretation that the addenda obligate Fort Apache and Royal View to buy back her interests in those companies upon her demand if certain conditions exist.

"In the absence of ambiguity or other factual complexities, contract interpretation presents a question of law that the district court may decide on summary judgment . . . ."[11] "Whether a contract is ambiguous likewise presents a question of law."[12] "A contract is ambiguous if its terms may reasonably be interpreted in more than one way, but ambiguity does not arise simply because the parties disagree on how to interpret their contract."[13] "Rather, an ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or

---

[9] Nev. Rev. Stat. § 31.013(1).

[10] Morgan doesn't address whether the addenda are unsecured or under-secured, i.e., whether this case falls under NRS 31.013(1)(a) or (b).

[11] *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013) (quotation omitted).

[12] *Id.*

[13] *Id.*

having a double meaning."[14]  "Contract interpretation strives to discern and give effect to the parties' intended meaning."[15]

Save for a few irrelevant exceptions, the addenda are identical.  Each document lists four "[c]onditions subsequent[,]" like incapacity of the companies' principal Michael Bash, and then states that:

> Where any of these conditions subsequent occurs, Purchase [sic] may, at Purchaser's option and without cost to Purchaser, sell back to Company, to another Member, to a third party purchaser, or engage in any other lawful activity to dispose or convey units in Company whereby Purchaser shall be paid an amount no less [sic] Purchaser's original purchase price (referred to as Capital Contribution in the Operating Agreement and Units in the Purchase Agreement), plus the legal rate of interest, calculated at 10% simple interest per annum.  All such acts shall be deemed Permitted Transfers and Purchaser shall extend the right of first refusal, subject to the terms of this paragraph, to the Company and/or the other Members for the repurchase of Purchaser's units.[16]

This provision authorizes Morgan to sell her interests in the companies back to those companies upon the occurrence of certain "conditions subsequent[,]" and specifies the amount that she "shall be paid" if she does—her initial investment amount plus interest at 10% per year.

But this provision doesn't obligate the companies to buy what Morgan's selling.  Nor does it state that the "conditions subsequent" are obligations, such that their occurrence constitutes an event of breach by the companies.  Rather, this provision states that if Morgan sells her interests back to the companies for the specified amount or, for that matter, if she sells them "to another Member, to a third party purchaser, or engage[s] in any other lawful activity to

---

[14] *Id.* (quotations omitted).

[15] *Id.* at 367.

[16] ECF No. 33-2 at 2 (re: Fort Apache); *accord* ECF No. 20-2 at 2 (re: Royal View).

dispose or convey" her interests in the companies for that amount, then "[a]ll such acts shall be deemed Permitted Transfers . . . ."[17]  As discussed below, I can only guess at what that means on this record.

Presumably when Morgan purchased her interests in the companies, she agreed to certain restrictions on her ability to transfer those interests.  That language might be contained in either of the two agreements that each addendum states it "revise[s] and amend[s]"—the "Agreement for Purchase of Limited Liability Company Interest" and "the Operating Agreement of Ninety-Five Fort Apache Complex, LLC" or "Royal View, LLC."[18]  But Morgan doesn't provide any of those agreements, merely copies of each addendum.  Regardless, if Morgan agreed to certain restrictions on transferability, what this provision does, then, is discharge her duties about transferring her interests if one of the enumerated "conditions subsequent occurs."  This is consistent with the definition of "condition subsequent," which is "[a] condition that, if it occurs, will bring something else to an end; an event the existence of which, by agreement of the parties, discharges a duty of performance that has arisen."[19]

Because the plain language of the addenda doesn't support Morgan's interpretation that the companies are obligated to buy back Morgan's interests in them if she so demands, and any other agreements between Morgan and those companies are not in the record, Morgan hasn't demonstrated that her breach-of-contract claims constitute "an action . . . upon a contract . . . for the direct payment of money."  These evidentiary and interpretation infirmities are fatal to

---

[17] ECF No. 33-2 at 2 (re: Fort Apache); *accord* ECF No. 20-2 at 2 (re: Royal View).

[18] ECF No. 33-2 at 2 (re: Fort Apache); *accord* ECF No. 20-2 at 2 (re: Royal View).

[19] *Condition subsequent*, Black's Law Dictionary (11th ed. 2019).

Morgan's motions under NRS 31.013(1) for writs of attachment and have the same effect on her motions for partial summary judgment on her breach-of-contract claims.[20]

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Morgan's motions for writ of attachment **[ECF Nos. 15, 18 (corrected image), and 33] are DENIED.** Morgan's corresponding requests for judicial notice **[ECF Nos. 16, 19 (corrected image), and 34] are DENIED as moot.**

IT IS FURTHER ORDERED that Morgan's motions for partial summary judgment **[ECF Nos. 20, 35] are DENIED** without prejudice to Morgan's ability to reurge those motions, if she can, with a fully developed memorandum of points and authorities containing the supporting law, evidence, and analysis. Morgan's corresponding requests for judicial notice **[ECF Nos. 21, 36] are DENIED as moot.**

IT IS FURTHER ORDERED that defendants' conclusory requests to stay these proceedings **[ECF Nos. 44 and 46–48] are DENIED** without prejudice to defendants' ability to reurge that request with a fully developed memorandum of points and authorities containing the supporting law, evidence, and analysis.

Finally, I find that compelling reasons exist to seal the addenda because those documents contain the full name and unredacted Social Security Number of an individual,[21] so the Clerk of Court is directed to **SEAL ECF Nos. 33-2, 33-16, 15-2, 15-10, 18-2, and 18-10.**

_____

U.S. District Judge Jennifer A. Dorsey
August 27, 2019

---

[20] *See e.g.* ECF No. 20 at 7–8 (arguing that Royal View breached its duty under the addendum to buy back Morgan's interests after she "exercised" her "put option" do to so); *accord* ECF No. 35 at 11 (same, but about Fort Apache).

[21] *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006).