LAW OFFICES OF BYRON THOMAS
BYRON THOMAS
Nevada Bar No. 8906
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada  89146
Phone:    (702) 747-3103
Facsimile: (702) 543-4855
Attorneys for Defendants Michael and Jeremy Bash

# UNITED STATES DISTRICT COURT

## DISTRICT OF, NEVADA

|  |  |
|---|---|
| DONNA MORGAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL BASH, an individual; JEREMY BASH, an individual; JANICE MCCOWN, an individual; BERKLEY ENTERPRISES, INC., a Nevada corporation; PEPPERDINE ENTERPRISES, INC., a Nevada corporation; NINETY-FIVE FORT APACHE COMPLEX, LLC, a Nevada limited liability company; ROYAL VIEW, LLC, a Nevada limited liability company; and DOES 1 through 20, inclusive, Defendant. | Case No. 2:19-cv-00546-JAD-BNW<br><br>**OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT** |

COMES now Defendants Michael and Jeremy Bash by and through their counsel Law Offices of Byron Thomas and files this this Opposition to Plaintiff's Partial Motion for Summary Judgment  (the "Opposition").  The Opposition is based on the points of authorities and any argument ordered by the Court

## POINTS AND AUTHORITIES

A. <u>Disputed Facts</u>

<u>Jeremy Bash</u>

Plaintiff claims Jeremy Bash made the following misstatements:

> Jeremy Bash admits that he made misleading statements of material fact to Plaintiff to induce her to invest Royal View. (Id.; J. Bash RFAs No. 90). Specifically, Jeremy Bash made untrue representations of fact to Plaintiff, including in or around March 2011, when Jeremy Bash told Plaintiff that "a guaranteed buyer had signed a binding letter of intent" to purchase the Royal View Property (Id.; J. Bash RFAs No. 85). In fact, there was no such binding letter of intent. (Id.; J. Bash RFAs No. 86). Jeremy Bash also admits that representations made in the Royal View Addendum about the encumbrances on the Royal View property were false. (Id.; J. Bash RFAs No. 71.) Jeremy Bash represented to Plaintiff that investing in Fort Apache was a "guaranteed return investment." (Id.; J. Bash RFAs No. 108.) And Jeremy Bash made statements to Plaintiff about the return she could expect to make if she invested in Royal View, which he admits were misleading. (Id.; J. Bash RFAs No. 91, 92.) Jeremy Bash also admits that he made misleading statements of material fact to Plaintiff in order to induce her to invest Fort Apache. (Id.; J. Bash RFAs No. 89). Jeremy. Jeremy Bash admits that he omitted material facts to induce Plaintiff to invest in the real estate entities he controlled, Royal View and Fort Apache. (Id.; J. Bash RFAs No. 88.)

Motion for Summary Judgment p. 3:20-4:11. Jeremy Bash did not make any false statements of facts. See the Declaration of Jeremy Bash. He never made a statement to Plaintiff that a guaranteed buyer had signed a "binding letter of intent" on or around March 2011. Id. He never made a statement that there were no encumbrances on the Royal View property. Id. There were never any guarantees made to Plaintiff. Id. The statements made about the properties were "predictions". There were no guarantees. He did not make any false statements to the Plaintiff concerning Ninety- five Fort Apache. He was not involved with that project.

/ / /

/ / /

/ / /

<u>Michael Bash</u>

In 2008 Michael Bash was the president of Pepperdine Enterprises, Inc., which was the manager of Royal View, LLC. <u>See</u> <u>the Declaration of Michael Bash.</u> He was also the president of Berkeley Enterprises, Inc., the manager of Ninety-Five Fort Apache Complex II. <u>Id</u>. He executed the Agreement for the Purchase of Limited Liability Interest on behalf Royal View and Ninety-Five Fort Apache, in which the Plaintiff Donna Morgan acquired her interest in the LLC's. <u>Id</u>. see also A true and correct copy of the Agreements are attached to the Opposition to the Motion for Summary Judgment as Exhibit "A" p.2 of both Agreements. Both agreements contained a choice of law provision, which provided that the law of Nevada would apply, which was appropriate because they were Nevada properties, owned by Nevada companies, and both the land and the companies were subject to Nevada law. <u>Id</u>.

I have reviewed the Plaintiff's Motion for Summary Judgment. <u>Id</u>. Plaintiff claims I made the following misstatements:

> Specifically, Michael Bash made untrue representations of material fact to induce Plaintiff to invest in Royal View. (Id.; M. Bash RFAs No. 89.)
> The untrue representations of material fact include Michael Bash's representation to Plaintiff that a guaranteed buyer had signed a binding letter of intent to purchase the Royal View real property. (Id.; M. Bash RFAs No. 59.)
> In fact, there was no binding letter of intent from a buyer. (Id.; M. Bash RFAs No. 60.) Michael Bash also represented that investing in Royal View was a "guaranteed return investment." (Id.; M. Bash RFAs No. 110.).
> Michael Bash also made statements about the return she could expect to make if she invested in Royal View, which he admits were misleading. (Id.; M. Bash RFAs No. 90, 91.)
> Michael Bash also made untrue statements and misleading omissions to Plaintiff regarding Fort Apache, including the representation that the Fort Apache property included a grocery store. (Id.; M. Bash RFAs No. 112.)
> Not only was that representation false, but the land use restrictions on the Fort Apache property prohibit the building of a grocery store or convenience store until at least the year 2040. (Id.; M. Bash RFAs No. 113, 114.)
> Michael Bash also represented to Plaintiff that an investment in Fort Apache was a "guaranteed return investment." (Id.; M. Bash RFAs No. 111.).
> Jeremy Bash admits that he made misleading statements of material fact to Plaintiff to induce her to invest Royal View. (Id.; J. Bash RFAs No. 90).

Motion for Summary Judgment p. 3:20-4:11. Mr. Bash did not make any false statements of

fact. Id.

He did not make false statements concerning Royal View. Id. They were rezoning then listing this property for sale. Id. The property was rezoned, but the city would only rezone "Office", which is still in the category of "C-1." Id.

He never made the statement that a guaranteed buyer had signed a binding letter of intent to purchase the Royal View real property. Id. The only "guaranteed return" he made was the 10% simple interest per annum during the rezoning period, which she received. Id. Royal View had a 10 year lease agreement with Green Valley Grocers. Id. He gave a presentation to each investor with "projections of profits" but no guarantees, because there is no guarantee in any investment. Id. At the time of presentation, he was not aware of any restrictions for the Fort Apache property. Id. This was not disclosed to our company until we applied for permits to start this project. He was never given a copy of the CCR's from a HOA.

Defendants Bash will be filing a Motion to Amend their admissions tomorrow.

B. Argument
1. **Nevada law Governs the Parties Transactions, but Plaintiff's Motion for Summary Judgment is Based on California law, Therefore Summary Judgment Should be Denied**.

Plaintiff summary judgment motion is based on purported violations of California corporations law. A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice-of-law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, the parties have agreed that any disputes concerning the subject property would be resolved pursuant to Nevada law:

> It is well settled that the expressed intention of the parties as to the applicable law in the construction of a contract is controlling if the parties acted in good faith and not to evade the law of the real situs of the contract. Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 407, 47 S.Ct. 626, 71 L.Ed. 1123 (1927); Bedford v. Eastern Building & Loan Ass'n 181 U.S. 227, 242-43, 21 S.Ct. 597, 45 L.Ed. 834 (1901); Big Four Mills v. Commercial Credit Co., 307 Ky. 612, 211 S.W.2d 831, 836 (1948); Hansen v. Duvall, 330 Mo. 59, 62 S.W.2d 732, 739 (1933). Under choice-of-law principles, parties are permitted within broad limits to choose the law that will determine the

validity and effect of their contract. <u>Gamer v. DuPont Glore Forgan, Inc</u>., 65 Cal.App.3d 280, 135 Cal.Rptr. 230, 234-35 (1976); <u>Grady v. Denbeck</u>, 198 Neb. 31, 251 N.W.2d 864, 865 (1977). See <u>Restatement (Second) of Conflicts of Laws</u> s 187 (1971). The situs fixed by the agreement, however, must have a substantial relation with the transaction, Seeman v. Philadelphia Warehouse Co., 274 U.S. at 408, 47 S.Ct. 626; Fahs v. Martin, 224 F.2d 387, 397 (5th Cir. 1955); Solevo v. Aldens, Inc., 395 F.Supp. 861, 864 (D.Conn.1975), and the agreement must not be contrary to the public policy of the forum. Big Four Mills v. Commercial Credit Co., 211 S.W.2d at 837; Kinney Loan & Finance Co. v. Summer, 159 Neb. 57, 65 N.W.2d 240, 245 (1954). See generally Annot., 125 A.L.R. 482 (1940); 45 Am.Jur.2d Interest and Usury ss 18-33 (1969); 16 Am.Jur.2d Conflict of Laws ss 46-51 (1964).

<u>Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Inv'rs</u>, 95 Nev. 811, 815, 603 P.2d 270, 273 (1979).  When the language of the contract is clear the Court must enforce the choice of law provision:

> **[u]nder choice-of-law principles, parties are permitted within broad limits to choose the law that will determine the validity and effect of theircontract."** *Ferdie Sievers & Lake Tahoe Land Co., Inc. v. Diversified Mortg. Investors,* 95 Nev. 811, 603 P.2d 270, 273 (1979). The employment agreement entered into by Risinger with SOC included the following provision: "Governing Law. This Agreement shall be governed and interpreted in accordance with the laws of the State of Nevada." (FAC, ex. A at ¶ 8.) This choice-of-law provision contemplates that the parties expected to be "governed by" Nevada's law. As there is no qualifying language, or apparent exceptions, to this term, disputes arising from the agreement are to be adjudicated under the guise of Nevada law. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.,* 323 F.3d 1219, 1222 (9th Cir.2003) (relying on *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 468–69, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992) to interpret "governed by" language and holding that disputes from agreement are to be adjudicated under chosen law).

<u>Risinger v. SOC LLC</u>, 936 F. Supp. 2d 1235, 1249 (D. Nev. 2013).  The Plaintiff contends that the summary judgment motion concerns her investments in Royal View and Ninety Five Fort Apache. The memberships agreements for Royal View and Ninety Five Fort Apache both contain choice of law provisions.  Ex. A p.2 of both agreements.  Both agreements provide as follows:

> Governing Law and Forum. The laws of the State of Nevada applicable to contracts made or wholly performed there shall govern the validity, construction, performance and affect of this Agreement. Any lawsuit to interpret or enforce the terms of this Agreement shall be brought in a court of competent jurisdiction in the State of Nevada.

See Exhibit A p.2 of both Agreemetns.  The provision clearly provides that the law of the state of Nevada and not California controls.  There, is no qualifying language or exceptions.

It is clear that the parties acted in good faith, concerning the choice of law provision.  Royal View is a Nevada LLC incorporated under the Laws of the State of Nevada.  The land that is at issue is located within the boundaries of Nevada, and was subject to Nevada zoning laws. Therefore, it makes abundant sense to have the choice of law be Nevada.

Likewise Ninety Five is a Nevada entity and the land at issue is located in Nevada. Therefore, the Nevada choice of law provision was negotiated in good faith. Moreover, there is no qualifying language or exemption that would prohibit the application of the choice of law provision. Risinger, 936 F.Supp .2d 1249.   Therefore, Plaintiff's Motion for Summary Judgment should be denied because it improperly asserts that California statute controls.

2. <u>Defendants Will File a Motion to Allow Admissions to be Amended or Withdrawn</u>,   .

Defendants must file a motion to allow the amendment of its admissions.  Defendants included the disputed facts section to show that admissions need to be amended or withdrawn. Defendants will file a separate motion to set aside or amend the admission. The motion will be meritorious.

The Ninth Circuit set out the rationale behind the request for admissions and the procedure that the Court should follow:

> Rule 36(a) states that a matter is deemed admitted "unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed.R.Civ.P. 36(a). Once admitted, the matter "is conclusively established unless the court on motion permits withdrawal or amendment of the admission" pursuant to Rule 36(b). Fed.R.Civ.P. 36(b). Rule 36(b) provides, in pertinent part:
> [T]he court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. *Id.* (emphasis added). Rule 36(b) is permissive, not mandatory, with respect to the withdrawal of admissions. *See Asea, Inc. v. S. Pac. Transp. Co.,* 669 F.2d 1242, 1248 (9th Cir.1981). The rule permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) "the presentation of the

merits of the action will be subserved," and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed.R.Civ.P. 36(b); *Hadley v. United States,* 45 F.3d 1345, 1348 (9th Cir.1995); *see also Carney v. IRS* (*In re Carney* ), 258 F.3d 415, 419 (5th Cir.2001) ("[A] deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)."); *622 *Donovan v. Carls Drug Co.,* 703 F.2d 650, 652 (2d Cir.1983) (stating that the court may excuse a party from its deemed admissions "only when (1) the presentation of the merits will be aided *and* (2) no prejudice to the party obtaining the admission will result"), *overruled on other grounds by McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133–34, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). However, because requests for admissions have a binding effect on the parties, *see* Fed.R.Civ.P. 36(b), the provision for withdrawal or amendment specifically provides parties with a potential safe harbor. *Id.*

Admissions are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by eliminating those that can be. *Id.* advisory committee note. The rule is not to be used in an effort to "harass the other side" or in the hope that a party's adversary will simply concede essential elements. *Perez v. Miami–Dade County,* 297 F.3d 1255, 1268 (11th Cir.2002). Rather, the rule seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice. *See* Fed.R.Civ.P. 36(b) advisory committee note. Thus, a district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions.

Conlon v. United States, 474 F.3d 616, 621–22 (9th Cir. 2007). "The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Id. at* 622 (9th Cir. 2007)(citation omitted). In the instant case Plaintiff's has filed a summary judgment motion. The sole factual basis for the summary judgment motion are the requests for admission of the Bash Defendants. Therefore, the first half of the test is met.

There would be no prejudice to Plaintiff from the withdrawal. In Conlon the Court looked at the degree to which the party had relied on the admissions. In Conlon the government refrained from an entire line of inquiry because it had relied on the admissions. Id. at 623. That is certainly not the case here. Plaintiff did not serve the admissions until a little over a month before discovery would close. Plaintiff did not conduct any depositions of Plaintiff and the Admissions were served concurrently with other discovery. Therefore, Plaintiff cannot argue that it has relied on the admissions.

Another factor was the timing of the request for withdrawal. The court denied the request in a case where the request was made in the middle of a trial and where trial was scheduled in approximately 8 days. Id. None of those factors are at play here. There has been no trial date and no hearing date set on the MSJ. Therefore the motion to withdraw or amend the admissions will be meritorious.

## CONCLUSION

For the foregoing reasons the Court should deny the partial request for summary judgment.
DATED this __24th___ day of September 2020.

LAW OFFICES OF BYRON THOMAS

_____/s/ Byron E. Thomas_____
BYRON THOMAS, ESQ.
Nevada Bar No. 8906
3275 S. Jones Blvd., Ste. 104
Las Vegas, Nevada 89146
(702) 747-3103
byronthomaslaw@gmail.com
Attorney for Defendants Michael and Jeremy Bash