UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Donna Morgan,<br><br>    Plaintiff<br><br>v.<br><br>Michael Bash, et al.,<br><br>    Defendants | Case No.: 2:19-cv-00546-JAD-BNW<br><br>**Order Denying Motion for Partial Summary Judgment**<br><br>[ECF No. 64] |

Donna Morgan sues Michael and Jeremy Bash and their businesses,[1] alleging that the Bashes duped Morgan into investing her life's savings into companies that they claimed were surefire bets. As this case progressed, two of the company defendants filed for bankruptcy, staying Morgan's claims against them; the defendants' attorney withdrew; and after obtaining new counsel, the Bashes failed to respond to several requests for admissions from Morgan, which Morgan now leverages in support of her motion for partial summary judgment on two of her California-law securities claims. The Bashes contend that the contracts' choice-of-law clauses prevent Morgan from raising California law claims. While I find that Morgan's claims do not fall within the scope of the choice-of-law provisions because they do not challenge the purchase agreements' validity, I deny her motion because the record is insufficient to determine what law applies to Morgan's tort claims absent the choice-of-law provision.

**Background**

In the early 2000s, Morgan met the Bashes, a pair who held themselves out as seasoned real-estate professionals.[2] Morgan contends that the Bashes called and met her in different

---

[1] Morgan also sues the Bashes' representative, Janice McCown.
[2] ECF No. 1 at ¶ 14.

Southern California locations, cajoling her into purchasing an ownership interest in two Nevada limited liability companies—Ninety-Five Fort Apache Complex, LLC and Royal View, LLC—which both own property in Nevada.[3] Relying on the Bashes' assurances that the companies' properties were ripe for commercial development, Morgan purchased the interests for a total of $150,000.[4] To do so, she signed two purchase agreements that contained identical choice-of-law provisions, contemplating that Nevada law would "govern the validity, construction, performance[,] and affect [sic] of" the contracts.[5] But when her returns were less than auspicious, she tried to exercise her option to sell her interests back to the companies, which they rejected.[6]

So Morgan sued the Bashes, their representative, and the companies and the corporations that manage them, for federal and state securities fraud, breach of contract, promissory fraud, and breach of the implied covenant of good faith and fair dealing.  During discovery, Morgan served more than 130 requests for admission under Federal Rule of Civil Procedure 36(a) on both Michael and James Bash.[7] The Bashes failed to respond, conclusively establishing their admissions.[8] The magistrate judge denied their request to withdraw the admissions because the Bashes failed to "show[] good cause" for their delayed response to the requests or their attempt

---

[3] ECF Nos. 1 at ¶¶ 15–17, 19, 21–24, 31–34; 64-2 at 14 (Jeremy Bash admissions); 64-3 at 16 (Michael Bash admissions).

[4] ECF No. 64-5 at ¶ 9.

[5] ECF No. 73-1 at 3, 10.

[6] ECF No. 20-1 at ¶¶ 12–14.

[7] ECF No. 64-1 at ¶ 2 (Hilton declaration).

[8] ECF No. 80 at 1–2.

to take them back.[9] Morgan, relying on those admissions, now moves for summary judgment as to the Bashes' liability for her state-law securities fraud claims.

## Discussion

### I. Morgan's claim does not fall under the choice-of-law clauses.

The Bashes argue that, despite their admissions, summary judgment is inappropriate because Morgan's claim for relief under a California statute is precluded by the choice-of-law clause in both purchase agreements, which calls for Nevada's law to apply.[10] Morgan does not dispute that the clause itself is valid. Instead, she offers a mere two sentences proclaiming that "the express terms of the contract" do not include her state-law securities claims.[11]

The issue here is simple: does Morgan's securities-law claim fall within the scope of the plain language of the clause? I find that it does not.[12] The provision is narrow; it concerns only each contract's "validity, construction, performance[,] and [e]ffect," which by its plain terms does not include the parties' other tortious conduct. Under Nevada law,[13] if the "language of the contract is clear and unambiguous . . . the contract will be enforced as written."[14] Although a successful claim could result in recission of the contract,[15] Morgan's securities claim doesn't

---

[9] *Id.* at 5.

[10] ECF No. 72 at 4–6.

[11] ECF No. 76 at 4.

[12] While generally the "first step in interpreting" a choice-of-law "clause is to apply" the forum state's rules that govern a clause's validity, I need not reach that issue because the parties do not raise it here. *See Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). The parties dispute only the scope of the provision.

[13] Because the parties agree that the choice-of-law clause is valid, I apply Nevada law to interpret its terms. *See* ECF No. 73-1 at 3.

[14] *Am. First. Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015) (citation omitted).

[15] *See* Cal. Corp. Code. § 25501.

3

challenge the agreement's validity,[16] it challenges whether the Bashes made false statements in the process of selling a security. To be sure, other clauses in the agreements restrain validity challenges to disputes over the contracts' "phrases, sentences, clauses, or paragraphs."[17] And while I note that states are split over whether certain choice-of-law provisions cover related tort claims—a bout in which Nevada does not appear to have picked a winner—those cases generally involve clauses with broad language including claims "arising out of" the contract or relationships that are wholly "governed by" one state's law.[18] The clause here does not use such sweeping language. And because the clause is narrow in its scope, I need not determine which approach Nevada would follow in construing a broad provision. Simply, the choice-of-law clause's unambiguous terms do not cover Morgan's state-law securities claim.[19]

---

[16] *Cf. May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) ("Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration.").

[17] ECF No. 73-1 at 3 ("[I]n the event that anyone [sic] or more of the phrases, sentences, clauses or paragraphs contained in this Agreement should be declared invalid by a court of competent jurisdiction, this Agreement shall be construed as if such invalid phrase, sentence, clause or paragraph had not been inserted into this agreement."), 4; *cf. Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 406 (9th Cir. 1992) ("Because the phrase 'applicable law' was used no less than three times by Sutter Home in reference to the local law of the state where the agreement had application, this court cannot accept that such language had no intended meaning.").

[18] *See, e.g.*, *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1154 (Cal. 1992) ("[W]e hold a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between parties, encompasses all causes of action arising form or related to that agreement, regardless of how they are characterized."); *Knieriemen v. Bache Halsey Stuart Shields Inc.*, 74 A.D. 2d 290, 293 (N.Y. App. Div. 1980) ("That the parties agreed that their contract should be governed by an expressed procedure does not bind them as to causes of action sounding in tort . . . .").

[19] I need not and do not consider Morgan's argument that California law prohibits waiver of claims under California's securities law because I find that her state-law securities claims fall outside of the choice-of-law provision's scope.

4

## II. Morgan's motion for summary judgment

Deciding the clause's scope does not end the choice-of-law analysis. "In a federal question action [in which] the federal court is exercising supplemental jurisdiction over the state claims, the federal court applies the choice-of-law rules of the forum state."[20] Under Nevada law, "the Second Restatement's most significant relationship test governs choice-of-law issues in tort actions unless another, more specific section of the Second Restatement applies to the particular tort."[21] Because Morgan's claim sounds in the Bashes' misrepresentations, § 148 governs my choice-of-law analysis.[22] Under § 148(2), "when the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider" six factors to decide the state that "has the most significant relationship to the occurrence and the parties":

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations;
>
> (b) the place where the plaintiff received the representations;
>
> (c) the place where the defendant made the representations;
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties;
>
> (e) the place where a tangible thing [that] is the subject of the transaction between the parties was situated at the time; and
>
> (f) the place where the plaintiff is to render performance under a contract [that] he has been induced to enter by the false representations of the defendant.[23]

---

[20] *Paracor Fin., Inc.*, 96 F.3d at 1151.

[21] *General Motors Corp. v. Eighth Jud.Dist. Court of State of Nev. ex. rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev. 2006).

[22] Restatement (Second) of Conflict of Laws § 148.

[23] *Id.*

5

The record before me is insufficient to determine whether the first and last factors favor California or Nevada. Although Morgan offers evidence that the Bashes made statements to her while she was in California, it's unclear where Morgan's loss occurred, where she signed the contract, and where she rendered performance. For example, the place of loss could "be either the place where [Morgan] entered into the contract or the place where [she] relinquished the assets [under] the terms of the contract, or . . . the place where [she] received the consideration for the relinquishment."[24] These factors are important for the choice-of-law analysis here because "[w]hen [a] plaintiff's action in reliance is taken [under] the terms of an agreement made by the plaintiff with the defendant[] or is otherwise of a sort contemplated by the defendant, the place of reliance is a more important contact than it is in other situations . . . ."[25] And because the parties' briefing stops at whether the contracts' terms preclude Morgan's California-law securities claim, I am left without the ability to determine if she can recover under California law or must bring her claim under Nevada's securities statute.[26]

## Conclusion

IT IS THEREFORE ORDERED that **Morgan's motion for partial summary judgment [ECF No. 64] is DENIED**.

**IT IS FURTHER ORDERED** that this case is **REFERRED to the magistrate judge for a MANDATORY SETTLEMENT CONFERENCE between the parties unaffected by the automatic bankruptcy stay**—Donna Morgan, Michael Bash, Jeremey Bash, Janice

---

[24] *Id.* at cmt. c.

[25] *Id.* at cmt. f.

[26] *See* Nev. Rev. Stat. §§ 90.295 (defining security), 90.570 (prohibiting untrue statements in the offer and sale of securities), 90.660 (establishing civil liability).

McCown, Berkley Enterprises, Inc., and Pepperdine Enterprises, Inc. The parties' obligation to file their joint pretrial order is **STAYED until 10 days after that settlement conference**.

      IT IS FURTHER ORDERED that **the Clerk of Court is DIRECTED to seal ECF No. 73**. ECF No. 73 was filed in violation of LR IC 6-1(1), (3), (4), and (5). Attorney Byron Thomas is advised to correct the deficiency and refile the document using the event *Notice of Corrected Image/Document* and link to ECF No. 73.

                                          _____
                                          U.S. District Judge Jennifer A. Dorsey
                                                         February 16, 2021